*945 Plaintiff claims that the Department of Housing and Urban Development (hud) entered into an agreement with plaintiff, drawn from several documents, oral understandings, and the parties’ conduct, whereby plaintiff would pay hud an inspection fee and hud would inspect for plaintiffs benefit the construction of plaintiffs housing project. Plaintiff further claims that hud failed properly to inspect the project and that therefore the project was shoddily constructed. Plaintiff petitions the court for a monetary award as compensation for the damage it has incurred.
Defendant claims that hud did not enter into any agreement with plaintiff to inspect the project for plaintiffs benefit. Defendant claims that the document which contains the reference to inspection of the project and to the inspection fee was between hud and the mortgagee, not between hud and plaintiff. Defendant further contends that hud inspected the project only in order to protect hud’s commitment to insure plaintiffs mortgage. Defendant claims that the inspection fee charged was a cost of the mortgage insurance and not, as plaintiff claims, compensation for guaranteeing that the project was properly constructed. Defendant concludes that since there is no contract between it and plaintiff and since, according to defendant, there is no implied-in-fact agreement between the parties whereby defendant obligated itself to inspect the project for the benefit of plaintiff, the court lacks subject matter jurisdiction over plaintiffs claim.
Defendant moves for summary judgment and plaintiff has cross-moved for partial summary judgment.[1] We hold that no contract over which we have jurisdiction was created between plaintiff and defendant that obligated defendant to inspect the project for the benefit of plaintiff.
On June 16, 1977, plaintiff and hud entered into an agreement whereby hud committed itself under the provisions of section 221(d)(4) of the National Housing Act to insure plaintiffs mortgage obligation. The agreement was contingent, in part, upon hud’s review and approval of (1) *946 the project mortgage, (2) the project construction contract, and (3) the project architect agreement. Plaintiff obtained a mortgage for its project, Brookside Apartments, Beaver Falls, Pennsylvania, from the Mellon Bank, Pittsburgh, Pennsylvania. Plaintiff entered into a construction contract on October 17, 1977, with a joint venture construction company, Monal Construction Company and L-D Building Company.
Plaintiffs claim that hud agreed to inspect the project for plaintiffs benefit relies on three contract provisions. The first two provisions are part of the mortgage commitment agreement between hud and the mortgagee, Mellon Bank. Paragraph 3(c) of that agreement states that HUD has the right of approval over the construction contract. Paragraph 5(b) states that:
During the course of construction, the Commissioner and his representatives shall at all times have access to the property and the right to inspect the progress of construction, and an inspection fee in the amount of $13,670 shall be paid upon the initial insurance endorsement of the mortgage note. The inspection of construction by a representative of the Commissioner shall be only for the benefit and protection of the Secretary of Housing and Urban Development.
The third provision is article 3-B of the construction contract between plaintiff and the construction company. That article section states, in part,
B. Each month after the commencement of work hereunder, the Contractor shall make a monthly request for payment * * * by the Owner for work done during the preceding month. Each request for payment shall be filed at least ten (10) days before the date payment is desired. Subject to the approval of the Lender and the Commissioner, the Contractor shall be entitled to payment thereon* * *.
Plaintiff concludes that hud’s right to approve the construction contract linked with hud’s inspection privileges and its right of approval over payments to the contractor created an implied-in-fact contract between defendant and plaintiff whereby hud obligated itself to inspect the project for the benefit of plaintiff. In other words, plaintiff argues that hud was responsible to protect plaintiffs interest in the project being properly constructed because (1) all the relevant *947 documents used in the development of the project were HUD-drafted forms, (2) hud had the right of approval over all payments of funds to the contractor, (3) hud inspected the project to see that it complied with the construction contract, and (4) plaintiff was not empowered with the authority to withhold funds from the contractor as a penalty for poor workmanship.
Because the case is presented to us on motions for summary judgment, we must examine the facts presented in the light most favorable to each non-moving party. In plaintiff’s cross-motion, we are asked to find that the parties had entered into an agreement; that the insurance commitment between defendant and the mortgagee is evidence of the agreement between defendant and plaintiff; that defendant had full authority to draft the construction contract; that the construction contract gave defendant the exclusive authority to inspect the project and to distribute funds to the contractor; and that the exclusive nature of HUD’s authority to inspect and distribute funds implies the inspection was for plaintiffs benefit. We decline to make such findings however. First, the agreements give both the mortgagee and hud the right to inspect the project and the right to approve the payment of funds to the contractor. hud’s authority was not exclusive. Second, defendant points out that the insurance commitment only defined the relationship between hud and the mortgagee. Plaintiff claims that the insurance commitment is evidence of the agreement between it and defendant with respect to provisions which are to plaintiffs advantage, but claims that the same document is not relevant to the case with respect to provisions that are adverse to plaintiff. If the commitment is a part of the agreement which plaintiff argues exists between the parties, the entire document must be considered. Third, plaintiff makes ambiguous references to certain oral understandings between it and hud. However, in response to defendant’s demand for particularization of these understandings, plaintiff only cites oral statements which were later incorporated in one of the documents in question. We therefore find that there are no oral understandings which are outside of or are in *948 conflict with the terms of the documents. In view of these facts, we cannot grant plaintiffs cross-motion.
Defendant’s motion presents issues which, viewed in terms most favorable to plaintiff, can be resolved by the court without further proceedings. The program under which plaintiffs mortgage was insured follows a general pattern of procedures. The prospective lender, here the Mellon Bank, submits to hud an "Application for Mortgage Note Insurance.” The developer, plaintiff, at the same time submits to hud a detailed statement about the proposed project, hud reviews these documents and, if the project warrants, enters into a "Commitment to Insure” with the mortgagee. The "Commitment” delineates the obligations between the parties to the agreement, hud and the mortgagee. In the present case, hud obligated itself to "endorse for insurance * * * a mortgage note.” The balance of the Commitment details what must be done for hud to be so obligated. The requirements include providing hud with copies of the mortgage and the construction contract for its approval. They also include the requirement in paragraph 5(b), supra, that hud have access to the project for inspection. Finally, the owner/developer of the project must enter into a "Regulatory Agreement” with hud whereby the owner/developer agrees to comply with certain hud regulations concerning the operation of the project after it is completed.
In order for an implied-in-fact contract to be created, there must be a meeting of the minds which is inferred from the conduct of the parties. However, the "evidence” which plaintiff cites does not indicate that such a meeting of minds took place between it and defendant. Defendant and plaintiff are not both parties to any of the written agreements which plaintiff claims are evidence of an agreement between defendant and plaintiff. Nothing in the agreements indicates that defendant obligated itself to protect plaintiffs interest in the project being properly constructed. In fact, the agreement which specifically refers to HUD’s right of inspection, and the inspection fee, states *949 that the inspection was "only for the benefit and protection of the Secretary of Housing and Urban Development.”[2] While this clause is contained in an agreement between hud and the mortgagee, it is evidence of hud’s intention to make clear that it was not obligating itself to inspect the project for the benefit of any other entity.
As stated above, the construction contract between plaintiff and the construction company gives the mortgagee and hud jointly the right to approve the payment. It is common practice for construction mortgagees to have control over the purse strings and again there is no indication that defendant’s right of approval has any other purpose than protection of defendant. The contract does not indicate that plaintiff is itself unable to inspect the project and report construction flaws to the mortgagee in order that they be corrected. Plaintiff is further protected from defects in workmanship by article 6 of the construction contract which requires the contractor to furnish plaintiff a performance bond against which plaintiff can make claims for the contractor’s failure to complete the contracted work.
The present case is easily distinguishable from the two cases plaintiff relies upon for defendant’s obligation. Paccori, Inc. v. United States, 185 Ct. Cl. 24, 399 F.2d 162 (1968), concerned a construction contract between the Government and a building contractor. In Paccon, there was an express contract between the Government and that plaintiff, which the court interpreted. The instant case does not concern an express contract and the court’s interpretation of the express conditions of a particular contract has little value as precedent.
The second case, Somali Development Bank v. United States, 205 Ct. Cl. 741, 508 F.2d 817 (1974), involved an agreement between the Government and that plaintiff for a loan to that plaintiff to be used for the development of businesses in Somali. The court held that the petition raised a claim that sounded in tort and was therefore outside our jurisdiction. The court rejected that plaintiffs *950 contention that there was an implied-in-fact contract created whereby defendant guaranteed the success of the plaintiffs enterprise when the Government loaned funds to that plaintiff. Instead the court held that such a warranty is not implied on the part of defendant "where the warranty is not expressly provided for in a statute or contract.” Id., 205 Ct. Cl. at 751, 508 F.2d at 822. Somali offers the present plaintiff no grounds upon which to base its claim.
Plaintiff has offered no evidence which would indicate that a "meeting of the minds” took place between it and defendant whereby defendant obligated itself to inspect the workmanship of the construction of the project for plaintiffs benefit. There is nothing to indicate that the inspection fee was anything more than a cost of obtaining the mortgage insurance. Certainly nothing in the statute or regulations governing the transaction empowers defendant to enter into an arrangement such as plaintiff envisions. This is strong evidence that defendant never intended to engage in inspecting the project for plaintiffs benefit. While plaintiff may have been harmed by the poor workmanship, no evidence has been presented which would indicate a breach by defendant of an express or implied-in-fact contract — the only contracts over which we have jurisdiction.
When the party moving for summary judgment makes out a convincing showing that no genuine issues of fact remain, the burden is upon the other party to demonstrate adequately by receivable facts that a real, not a formal, controversy exists. See Mandalay Shores Co-op Housing Ass’n v. Pierce, 667 F.2d 1195 (5th Cir. 1982), cert. denied, 459 U.S. 1036 (1982). Plaintiff has failed to meet that burden.
it is therefore ordered that plaintiffs motion for leave to file its cross-motion for partial summary judgment out-of-time is granted. Without hearing oral argument, and after carefully considering all the submissions, we grant defendant’s motion for summary judgment, deny plaintiffs cross-motion for partial summary judgment, and dismiss the petition.
*951 Plaintiffs petition for a writ of certiorari was denied February 22,1983.

 After the case was fully briefed and submitted on defendant’s motion for summary judgment, plaintiff moved for leave to file its cross-motion for partial summary judgment out of time, accompanied by its cross-motion and a supporting brief. The court grants plaintiffs motion for leave to file the proffered documents and has fully considered them in rendering its determination.

 Cf. United States v. Neustadt, 366 U.S. 696, 708-10 & n.24 (1961) (fha appraisal of home for purposes of guaranteeing mortgage pursuant to § 266 of the National Housing Act is for the protection of the Government, not the buyer, and does not give rise to a claim under the Federal Tort Claims Act).